UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                        :
JOSE REYES SANCHEZ,                     :
                        Petitioner,     :
                                        :       10 Civ. 5545 (DLC)
            -v-                         :       S1 08 Cr. 886 (DLC)
                                        :
UNITED STATES OF AMERICA,               :       OPINION AND ORDER
                        Respondent.     :
                                        :
---------------------------------------- X

DENISE COTE, District Judge:

        Jose Reyes Sanchez has filed a petition for a writ of

habeas corpus, pursuant to 28 U.S.C. § 2255.  Sanchez pleaded

guilty to narcotics charges in 2009, and did not appeal his

sentence.  While Sanchez does not seek to withdraw his plea, he

does seek a resentencing and has offered materials in support of

a reduced sentence.  For the following reasons, the petition is

denied.


                            BACKGROUND

        Sanchez was arrested on September 4, 2008, pursuant to a

complaint which charged him along with two co-defendants with a

narcotics conspiracy in violation of 21 U.S.C. §§ 812,

841(a)(1), 841(b)(1)(A), and 846.  One of the co-defendants was

Aurelio Berber Magana ("Berber").  On September 17, Sanchez was

indicted with five others for conspiring to distribute a

                                1

kilogram or more of heroin for a four month period in 2008.  On February 25, 2009, the defendants were named in a superceding indictment, which added a charge that Sanchez and Berber conspired to launder money in violation of 18 U.S.C. § 1956(h). On September 24, 2008, trial had been scheduled for June 1, 2009.

The Government's evidence against Sanchez included the following.  Berber received heroin from Mexico and distributed it in New Jersey and elsewhere.  Sanchez helped process the drugs and deliver the heroin to Berber's customers.  Among hundreds of recorded conversations, were conversations in which Sanchez discussed the heroin distribution enterprise.  A seized drug ledger reflected distribution of multi-kilogram quantities of heroin.  Sanchez also helped Berber deliver the proceeds of the narcotics transactions to Mexican suppliers by wire transfers.  Sanchez delivered the cash to the businesses that wired the money to Mexico and he provided false names for the wire transfers.

In March 2009, or approximately six months following his arrest, Sanchez began his effort to cooperate with the Government.  On May 1, Sanchez entered a plea of guilty pursuant to a cooperation agreement with the Government.  During his allocution, Sanchez explained that he had worked with others in

2008 to distribute over one kilogram of heroin and to launder
money.  In connection with the money laundering activities,
Sanchez explained that he concealed the narcotics proceeds in
his apartment and then sent it to Mexico by Western Union wire
transfers by making numerous small transfers and using false
names for the transfers.

The Pre-Sentence Report ("PSR") calculated Sanchez's
sentencing guidelines range as 108 to 135 months' imprisonment,
and recommended a 60 month sentence in light of the defendant's
cooperation.  Sanchez was sentenced on March 12, 2010, at which
time the Government moved for a departure pursuant to U.S.S.G. §
5K1.1 for Sanchez's substantial assistance.  The Court sentenced
Sanchez principally to 54 months' imprisonment.  Sanchez was
advised of his right to appeal, but did not file any appeal.

## DISCUSSION

Sanchez filed this timely petition on July 8, 2010,
asserting essentially three grounds for relief.  He first
asserts that his attorney pressured him to plead guilty to the
money laundering charge when he had not engaged in money
laundering, failed to advise him properly of his rights and the
consequences of a plea of guilty, and failed to obtain for him

sufficient benefit from his cooperation.  Sanchez also contends
that the Court erred at sentence by treating the sentencing
guidelines as mandatory, by failing to consider his status as a
deportable alien, and by failing to give him sufficient credit
for his cooperation.  Finally, he excuses his failure to file an
appeal by asserting essentially, but erroneously, that his plea
agreement with the Government contained a waiver of his right to
appeal.

    This petition was largely written by a person who did not
understand the critical facts surrounding Sanchez's plea and
sentence.  As a consequence, there are references to legal
issues that have little or no connection to Sanchez's
prosecution and there is very little factual development to
support the petition's claims.  With this background, Sanchez's
claims are addressed below.

I. Representation by Counsel

    The petition's complaints about the quality of Sanchez's
representation at the time of his plea can be swiftly rejected.
A guilty plea may be withdrawn only if "the defendant can show a
fair and just reason for requesting the withdrawal."  Fed. R.
Crim. P. 11(d)(2)(B).  A court may "rely on defendant's in-court
sworn statements that he understood the consequences of his
plea, had discussed the plea with his attorney, and knew that he

4

could not withdraw the plea."  United States v. Carreto, 583
F.3d 152, 157 (2d Cir. 2009) (citation omitted).  "Where a
motion to withdraw a plea is premised on involuntariness, the
defendant must raise a significant question about the
voluntariness of the original plea.  A defendant's bald
statements that simply contradict what he said at his plea
allocation are not sufficient grounds to withdraw the guilty
plea."  United States v. Doe, 537 F.3d 204, 211 (2d Cir. 2008)
(citation omitted).

The defendant's plea allocution undermines the assertions
regarding his plea that Sanchez now makes against his appointed
counsel.  Sanchez was under oath during his plea allocution and
warned that he could be prosecuted for perjury if he testified
falsely.  During the allocution, Sanchez asserted that he had
had a sufficient opportunity to discuss his case with his
attorney, including any defenses to the charges and the
consequences of entering a plea.  He told the Court that he was
satisfied with his attorney's representation.  He was carefully
advised of each of his constitutional and legal rights, as
required by Rule 11, Fed. R. Crim. P.  He was advised of the
elements of each of the charges against him and the penalties
for those charges.  He admitted that he had discussed the issues
concerning sentencing with his attorney.  He denied that anyone

had threatened him or forced him "in any way" to plead guilty.
When he identified the cooperation agreement he had executed
with the Government, he acknowledged understanding that it was
up to the Court alone to decide what credit to give him for his
cooperation in the event the Government wrote a 5K1.1 letter
acknowledging his substantial assistance.  He admitted that no
one had promised him what sentence he would receive.

The allocution also showed there was "a factual basis for
the plea."  Fed. R. Crim. P. 11(f).  When asked to describe in
his own words what he had done to make him believe he was
guilty, he confessed that he had distributed heroin and
laundered money in 2008.  As for the money laundering, he
explained that he kept the drug money in his apartment and sent
it to Mexico by Western Union, hiding it in "minimal quantities
of wire transfers."[1]  He admitted that he was hoping to make
money from doing all of this, and knew he was doing something
wrong and violating the law.

Thus, the record at the time of the plea undermines any
claim that Sanchez's counsel was inadequate in any way that
affected his decision to plead guilty.  Without a more detailed

---

[1] In his petition, Sanchez appears to admit that he did engage in
money laundering.  Sanchez explains that he took another person
"every day to a different parts too made [sic] transactions via
Wester [sic] Union to Mexico."

6

and specific allegation explaining in precisely what way his attorney failed him, the plea allocution establishes that his plea was knowing and voluntary.  It should be noted as well, that Sanchez does not actually seek to revoke his plea and proceed to trial.  His concern is with the length of the sentence imposed upon him following his plea.

Sanchez makes one complaint against his attorney that concerns his sentence.  He contends that the attorney failed to obtain sufficient credit for him for his cooperation.  Sanchez does not, however, point to anything in particular that the attorney omitted to do.  As is customary in the case of cooperators, the Government submitted a § 5K1.1 letter that described Sanchez's cooperation.  Defense counsel discussed some of the issues about Sanchez's life raised either in the PSR or by the Court and made several arguments for leniency.  When Sanchez spoke, he admitted committing crimes and thanked his attorney, among others, for her help.  The Court imposed a sentence principally of 54 months' imprisonment, which was significantly below the mandatory minimum term of imprisonment of 10 years, and the sentencing guidelines range of 108 to 135 months, and below the PSR recommendation of 60 months.  There is no basis, therefore, to find that Sanchez received ineffective assistance from counsel at sentence.

II.  Errors in Sentencing

     Sanchez next contends that the Court erred by treating the sentencing guidelines as mandatory, by ignoring the fact that he was a deportable alien and ineligible for community placement, and by failing to give him sufficient credit for his cooperation.  None of these arguments suggests that he should be re-sentenced.

     There is nothing in the sentencing proceeding that suggests that the Court considered the sentencing guidelines to be mandatory.  As the Court informed the defendant during his plea, at the time of sentence the Court considers all of the factors that are outlined in § 3553(a) and then decides what a reasonable sentence is for a defendant.  The law presumes at the time of sentence that the Court follows those principles, whether they are articulated or not.  See United States v. Brown, 514 F.3d 256, 264 (2d Cir. 2008).  In this case, during the sentencing proceeding the Court discussed, inter alia, the defendant's role in the criminal enterprise, his cooperation, his skills, and his record while in custody.  The Court explicitly balanced the needs for individual and general deterrence and proper punishment and imposed a sentence that departed substantially below the applicable guidelines range.

There is also no basis to find that the Court was ignorant of the fact that Sanchez is a deportable alien.  Indeed, the conditions of supervised release as enunciated at sentence included the requirements that he cooperate with immigration authorities, submit to deportation, and not unlawfully reenter the country.

Finally, Sanchez was given substantial credit for his cooperation.  His cooperation was the principal focus of the sentence and the principal reason for the substantial departure that he received.

Unless a sentencing court's errors in failing to properly apply the Sentencing Guidelines are constitutional or jurisdictional, "absent a complete miscarriage of justice, such claims will not be considered on a § 2255 motion where the defendant failed to raise them on direct appeal." Graziano v. United States, 83 F.3d 587, 588-89 (2d Cir. 1996).  Sanchez's attacks on his sentence are procedurally barred by his failure to raise them on direct appeal.  Id.

### III. Attorney's Advice Regarding Appeal

Finally, the petition explains why Sanchez did not file a direct appeal.  It asserts that Sanchez believed he could not file a direct appeal because his plea agreement contained a waiver of his right to appeal and his attorney had told him that

the agreement would benefit him.  This assertion appears to be
added by someone who assisted Sanchez in filing his petition and
did not understand that Sanchez never executed an appeal waiver.
While plea agreements customarily contain appeal waivers,
Sanchez executed a cooperation agreement.  Cooperation
agreements do not customarily contain appeal waivers and
Sanchez's agreement was no exception.  Thus, there is no factual
basis to excuse Sanchez's failure to file a direct appeal.

The petition asserts that Sanchez failed to file an appeal
because

> my plea agreement say's that is I ascpted [sic] the
> plea offer, I will be not able to appeal as a
> condition on my plea offer.  That's the reason why I
> did not appeal but I wasn't agreed with the offer but
> my attorney say's [sic] that if I not take the plea
> offer, they would giving me more time the day of my
> sentence back in March 16, 2010.  That's one of the
> few reasons I did not appeal.

Later, the petition asserts, "Mr. Jose Reyes Sanchez attorney
told him that he have not the rigth [sic] to appeal because it
was stipulated in his plea agreement deal," and "his attorney
whom told him that he was giving up all righths [sic] to
appeal."

As noted above, the cooperation agreement that Sanchez
executed did not contain any waiver of appellate rights.  During
the plea allocution, Sanchez represented that he had read the
agreement and had discussed it with his attorney.  He also

10

answered questions which indicated a familiarity with its principal terms.  At the conclusion of his sentencing proceeding, Sanchez was advised of his right to appeal. Notably, the petition does not assert that Sanchez ever asked his attorney to file an appeal, either before or after the sentencing proceeding.  Sanchez's attorney has filed a declaration representing that Sanchez "never asked me about the possibility of appealing his sentence, never indicated that he wished to appeal his sentence, and never asked me to file a Notice of Appeal on his behalf."  The attorney adds that it is her practice to file a notice of appeal when requested to do so, and that if Sanchez had made such a request or even "expressed interest in appealing his conviction or sentence," that she would have filed one.

Failure of counsel to file a timely notice of appeal in a criminal case "when requested by a defendant, constitutes ineffective assistance of counsel, entitling the defendant to relief."  United States v. Fuller, 332 F.3d 60, 64 (2d Cir. 2003).  To remedy this error, a district court may vacate the conviction and enter a new judgment from which a timely appeal may be taken.  Id. at 65.  See also Garcia v. United States, 278 F.3d 134, 137 (2d Cir. 2002).

11

Sanchez has failed to show that his attorney had any obligation to file a notice of appeal on his behalf or that she otherwise failed to perform any legal duty that she owed to him in connection with his right to appeal.  He has also failed to raise any question of fact regarding his right to appeal that requires a hearing.  To be entitled to a hearing on a petition for postconviction relief, "[t]he petitioner must set forth specific facts which he is in a position to establish by competent evidence." Dalli v. United States, 491 F.2d 758, 761 (2d Cir. 1974).

The assertion in the petition about Sanchez's appeal rights was drafted by someone unfamiliar with Sanchez's actual circumstances.  The assertion is premised on the belief that the agreement that Sanchez executed with the Government contained a waiver of appellate rights when it did not.  In the absence of a more specific claim by Sanchez that he requested that his attorney file an appeal on his behalf, this portion of his petition must also be denied.

CONCLUSION

The July 8, 2010 § 2255 petition for a writ of habeas corpus is denied.  Sanchez has not made a substantial showing of a denial of a federal right pursuant to 28 U.S.C. § 2253(c), and

12

413 F.3d 192, 195 (2d Cir. 2005).  The Court also finds pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith.  Coppedge v. United States, 369 U.S. 438, 445 (1962).  The Clerk of Court shall close the case.

SO ORDERED:

Dated:     New York, New York
           May 23, 2011

_____
                DENISE COTE
         United States District Judge

13

COPIES SENT TO:


Jose Reyes Sanchez
#61347-054
Rivers Correctional Institution
P.O. Box 630
Winton, NC 27986